IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PNC BANK, NATIONAL ASSOCIATION,
successor to NATIONAL CITY BANK,

      Plaintiff,

   v.

AUGUSTA APARTMENTS, LLC, a West
Virginia limited liability company,
KRISTIAN E. WARNER, BENJAMIN F.
WARNER, ANDREW M. WARNER, and
MONROE P. WARNER,

      Defendants.

Civil Action No. 1:10-cv-20

## COMPLAINT

Plaintiff, PNC Bank, National Association, successor to National City Bank, by and through its undersigned counsel, files this Complaint against Defendants Augusta Apartments, LLC, a West Virginia limited liability company, Kristian E. Warner, Benjamin F. Warner, Andrew M. Warner, and Monroe P. Warner, and in support thereof does hereby state and aver as follows:

### JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332 and 1367(b) in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

2. Venue is proper in this Court and district under 28 U.S.C. § 1392(a) because each of the Defendants resides in this judicial district, a substantial part of the events giving rive to claims of PNC Bank, National Association, successor to National City Bank occurred in this judicial district, and property that is the subject of this action is situated in this judicial district.

{01061079}

## THE PARTIES

3.  Plaintiff PNC Bank, National Association, successor to National City Bank (the "Lender" or "Plaintiff") is a national banking association having its principal office at 249 Fifth Avenue, One PNC Plaza, Pittsburgh, Pennsylvania 15222.

4.  Upon information and belief, Defendant Augusta Apartments, LLC ("Borrower") is a West Virginia limited liability company having a principal place of business located at 49 Falling Run Road, Morgantown, West Virginia, 26505 or 2567 University Avenue, Suite 6022, Morgantown, West Virginia, 26505 on which it owns and operates a 158-unit (296 bed) student apartment complex.

5.  Upon information and belief, Defendant Kristian E. Warner is an adult individual residing in Monongalia County, West Virginia.

6.  Upon information and belief, Defendant Benjamin F. Warner is an adult individual residing in Monongalia County, West Virginia.

7.  Upon information and belief, Defendant Andrew M. Warner is an adult individual residing in Monongalia County, West Virginia.

8.  Upon information and belief, Defendant Monroe P. Warner is an adult individual residing in Monongalia County, West Virginia.

9.  Defendants Kristian E. Warner, Monroe P. Warner, Andrew M. Warner, and Benjamin F. Warner hereinafter are referred to individually as an "Individual Defendant" and collectively as the "Individual Defendants").

## FACTUAL BACKGROUND

A.  The Construction Loan Agreement and Loan Documents

10.  Lender and the Borrower are parties to that certain Construction Loan Agreement, dated as of December 13, 2006, as amended and modified by that certain Loan

Modification Agreement, dated January 15, 2009 (as the same may have been further amended, modified, renewed, extended or supplemented collectively, the "Loan Agreement").  The Loan Agreement is hereby incorporated in full by reference.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

11. Pursuant to the terms of the Loan Agreement, the Lender agreed to provide a construction loan to the Borrower in the principle sum of up to twenty million six hundred forty-eight thousand dollars ($20,648,000.00) (the "Loan").

12. The Loan is evidenced by that certain Note, dated December 13, 2006 in the stated principal amount of $20,648,000.00, as amended and modified by (i) that certain Promissory Note Modification Agreement, dated as of June 30, 2008 but effective as of May 31, 2008 (the "Promissory Note Modification Agreement") and (ii) that certain Loan Modification Agreement, dated as of January 15, 2009 ((the "Loan Modification Agreement"; as each of the same may have been further amended, modified, renewed, extended or supplemented, collectively, the "Note").  The Note, Promissory Note Modification Agreement and the Loan Modification are each hereby incorporated in full by reference.  True and correct copies of the Note, the Promissory note Modification Agreement and the Loan Modification Agreement are attached to this Complaint as Exhibits B-1, B-2 and B-3, respectively.

13. As security for payment to Lender of the principal, interest, and all other sums provided for in the Note, the Deed of Trust (as hereinafter defined) and all other Loan Security Documents[1], and as security for performance of the agreements, conditions, covenants, provisions and stipulations contained in the Loan Security Documents, and in any renewal, extension or modification thereof and in all other agreements and instruments made and given by

---

[1] All capitalized terms used herein but not otherwise defined herein shall have the meaning given to such terms in the Loan Agreement, the Note or such other Loan Security Documents, as the case may be.

Borrower to Lender in connection therewith (collectively, the "Obligations"), the Borrower executed and delivered a Deed of Trust and Security Agreement (Credit Line Deed of Trust), dated December 13, 2006 (the "Deed of Trust"), pursuant to which the Borrower granted (i) to Charles B. Dollison, as Trustee for the benefit of Lender, in trust, with power of sale, for the use and benefit of the Lender and (ii) to the Lender directly a lien on and security interest in all of the Real Estate, buildings, Improvements, fixtures, machinery, equipment, tenements, hereditaments and appurtenances, and all other property interests of Borrower specified therein (as the foregoing collateral is defined in the Deed of Trust, collectively, the "Mortgaged Premises"). The Deed of Trust is hereby incorporated in full by reference. A true and correct copy of the Deed of Trust is attached to this Complaint as <u>Exhibit C</u>.

14. As further security for the Obligations, pursuant to an Assignment of Leases and Rents, dated December 13, 2006 (the "Assignment of Rents"), the Borrower absolutely and unconditionally assigned and transferred to Lender all of Borrower's rights, title, interests and privileges in, *inter alia*, (i) all leases then or thereafter in existence with respect to the Mortgaged Premises or any part thereof an all agreements for any use of the Mortgaged Premises or any part thereof, together with all extensions, renewals and guarantees and all amendments and supplements to any such leases or agreements (collectively, the "Leases" or singularly, a "Lease") and (ii) all rents, revenues, issues, income, receipts, profits and other amounts now or hereafter coming due to Borrower under the Leases (whether due for the letting of space, for services, materials or installation supplied by Borrower, or for any other reason whatsoever), cash or securities deposited by the Tenants (as defined therein) to secure performance of their obligations under the Leases, minimum rents, additional rents, percentage rents, concession rents, room receipt revenues, and other extraordinary receipts, and all proceeds

{01061079}

- 4 -

thereof, both cash and non-cash, and all other sums and rights provided in the Assignment of Rents (collectively, the "Rents"). The Assignment of Rents is incorporated in full by reference. A true and correct copy of the Assignment of Rents is attached to this Complaint as <u>Exhibit D</u>.

15. The Lender duly perfected its security interest in the Mortgaged Premises, the Leases and the Rents and all other property secured by the Deed of Trust and the Assignment of Rents (collectively, the "Mortgaged Property") by, *inter alia*, filing UCC Financing statements with the West Virginia Secretary of State and with the Clerk of Monongalia County, West Virginia.

16. The Deed of Trust and Assignment of Rents were filed with the recorder of deeds of Monongalia County, West Virginia.

17. The Lender has a first priority security interest in the Mortgaged Property.

18. Pursuant to that certain Guaranty of Completion and Payment of the Costs of the Project, dated December 13, 2006 (the "Completion Guaranty") Defendants Kristian E. Warner, Monroe P. Warner, Andrew M. Warner, and Benjamin F. Warner (each an "Individual Defendant" and collectively, the "Individual Defendants") unconditionally guaranteed, and agreed to become the surety of, Borrower's, *inter alia*, (i) completion of the Project (as defined therein) in accordance with the Loan Security Documents and (ii) maintenance of the property free and clear of any liens related to construction or completion of the Project. The Completion Guaranty is incorporated in full by reference. A true and correct copy of the Completion Guaranty is attached to this Complaint as <u>Exhibit E</u>.

19. Pursuant to that certain Agreement of Guaranty and Suretyship, dated December 13, 2006, the Individual Defendants, *inter alia*, absolutely, irrevocably and unconditionally guaranteed to Lender, and agreed to be a surety of, the full and timely payment,

whether by declaration, acceleration or otherwise, all obligations of the Borrower to Lender, whether or not Lender had made demand on the Borrower (the "Payment Guaranty" and together with the Completion Guaranty, the "Guaranties").  The Payment Guaranty is incorporated in full by reference.  A true and correct copy of the Payment Guaranty is attached to this Complaint as Exhibit F.

20. The Loan Agreement, Note, Deed of Trust, Assignment of Rents and the Guaranties together with all documents, agreements and instruments entered into in connection with any or all of the foregoing are collectively referred to as the "Loan Documents".

B. Defaults under the Loan Documents

21. The Loan has matured by the terms of the Loan Documents.

22. The Note provides that the principal amount outstanding, together with all accrued interest thereon and all other sums and costs advanced, incurred or otherwise outstanding thereunder or under any other Loan Security Documents shall be immediately due and payable on the Maturity Date.

23. The Note defines the Maturity Date as March 31, 2009.  See Ex. B-3, Loan Modification Agreement at §5, p. 2.

24. Notwithstanding the maturity of the Obligations, the Borrower has failed and refused to pay to Lender the amounts due Lender under the Loan Documents.

25. The Borrower's failure to pay the Obligations in full on or before March 31, 2009 constitutes an Event of Default under the Loan Documents. See Loan Agreement, §9.1; Note, §9(a); Deed of Trust, §19(b); Assignment of Rents, §5.

26. The Borrower also has defaulted under the Loan Agreement by (i) failing to timely pay the tax obligations -- which are substantial -- with respect to the Mortgaged Premises in violation of Section 9.7 of the Loan Agreement.

27. The Borrower's failure to timely pay its tax obligations is in violation of, and constitutes a default under, *inter alia*, the Note, §9(b); the Loan Agreement, §§9.3, 9.5, 9.6(a) and 9.7; the Deed of Trust; §19(c), and the Assignment of Rents, §5.

28. As a result of the Borrower's failure to pay its taxes, tax liens were assessed against the Mortgaged Premises and the Mortgaged Premises was scheduled for a tax sale on November 16, 2009.

29. The Borrower has further defaulted under the Loan Agreement by causing or permitting a number of other liens (with an aggregate face amount exceeding $6.28 million) to be entered against the Mortgaged Premises in violation of Section 9.7 of the Loan Agreement. As of June 1, 2009, the unreleased liens recorded in the office of the Clerk of the County Commission of Monongalia County, West Virginia, included, but were not limited to: (1) a Judgment recorded October 2, 2008 in the amount of $5,390.94; (2) a Judgment recorded January 29, 2009 in the amount of $14,446.61 plus interest and costs; (3) a Judgment recorded February 25, 2009 in the amount of $3,661.00 plus interest and costs; (4) a Mechanic's Lien recorded January 14, 2009 in the amount of $101,958.47; (5) a Mechanic's Lien recorded January 14, 2009 in the amount of $2,883,317.90; (6) a Mechanic's Lien recorded January 23, 2009 in the amount of $2,883,317.90; (7) a Mechanic's Lien recorded January 25, 2009 in the amount of $383,284.27; and (8) a Mechanic's Lien recorded March 28, 2009 in the amount of $4,766.63. The existence of the foregoing liens is in violation of, and constitutes a default under, *inter alia*, the Note, Section 9(b), as well as the Loan Agreement, §§9.3, 9.5, 9.6(a) and 9.7.

30. The Borrower has also caused an arbitration award, in the amount of $2,000,000.00, to be entered against it and in favor of Landau Building Company in violation of Section 5.7 of the Loan Agreement. The existence of such award violates the terms of, and constitutes a default under, *inter alia*, the Note, §9(b), the Loan Agreement, §§9.1, 9.2, 9.3, 9.5, 9.6(a) and 9.7, the Deed of Trust, §19(a), and the Assignment of Rents, §5.

31. Upon information and belief, Defendants are currently collecting all of the Rents from derived from the Mortgaged Premises. The Rents are collected in advance, in 6- or 12-month installments, or collected monthly by way of Automatic Clearing House (ACH) debits or check. Based upon a Rent Roll provided by the Borrower to the Lender the rentals paid by students to Augusta Apartments are in excess of $150,000.00 per month. However, the Borrower has refused to and failed to make any payment to Lender, despite Lender's demands and despite maturity of the Obligations.

32. Moreover, notwithstanding its continued collection of substantial Rents, the Borrower has ignored, and continues to ignore, its substantial tax obligations with respect to the Mortgaged Premises, forcing Lender to pay $158,139.92 on October 28, 2009, to the Monongalia County Sheriff's Tax Office in order to satisfy tax liens and cure the tax delinquencies on the Mortgaged Premises to avoid having the subject property exposed to a scheduled November 16, 2009 tax sale. Payment of such tax obligations by Lender was required to protect its interests and rights and avoid further jeopardy to them.

33. As of the date of this Complaint, the aforementioned Borrower defaults have not been cured.

34. Interest, attorneys' fees, expenses and late fees continue to accrue on the Obligations as set forth in the Loan Documents.

Case 1:10-cv-00020-JPB   Document 4   Filed 02/05/10   Page 9 of 16   PageID #: 14

## COUNT ONE
## BREACH OF CONTRACT AGAINST BORROWER

35. Plaintiff incorporates by reference Paragraphs 1 through 34 as though fully set forth herein.

36. The Borrower is in default of the Loan Agreement and the Loan Agreement expired by its terms on March 31, 2009.

37. Moreover, the Note has matured and all obligations thereunder became due and payable not later than March 31, 2009.

38. Notwithstanding the maturity of such Obligations, the Borrower has refused, and continues to refuse, to pay the Obligations due under the Loan Agreement and the Note.

39. Pursuant to the Loan Agreement and the Note, the Borrower agreed to pay all costs of Lender, including reasonable attorneys' fees in seeking to enforce and collect the Obligations.

40. Accordingly, Lender is entitled to judgment against the Borrower in the amount of $20,715,737.92, together with interest accruing after February 2, 2010 at the Default Rate, late fees, reasonable attorneys' fees and expenses and costs due Lender from the Borrower under the Loan Agreement and the Note.

## COUNT TWO
## APPOINTMENT OF A RECEIVER

41. Plaintiff incorporates by reference Paragraphs 1 through 40 as though fully set forth herein.

42. Good cause exists for the appointment of a receiver.

43. Under the terms of certain of the Loan Documents, the Borrower has consented to the appointment of a receiver.

44. The Loan Agreement provides that, "Upon the occurrence of any Event of Default, the Lender, in addition to any remedies that are available to it under the Note, the Mortgage and/or the other Loan Security Documents, or otherwise available under applicable Law, may, at its option, and without further demand, notice or delay, … do and perform any such acts and deeds, in the name of Borrower or Lender, as Lender shall deemed necessary or desirable to protect the Mortgaged Premises and Lender's interest therein."  Loan Agreement §10, §10.7.

45. Upon the occurrence and continuation of an Event of Default, Lender's remedies also include the right to appoint a receiver and all other rights described in the Deed of Trust.  Loan Agreement, §10.3.

46. The defaults under the Loan Documents are certain and cannot be disputed.

47. Under the terms of the Deed of Trust and the Assignment of Rents, Lender is entitled to entry of an order by this Court, allowing the appointment of a receiver to manage and operate Mortgaged Property, to collect the payments, Rents, income and revenues therefrom and to enforce Lender's security interest and lien and other rights and interests therein.

48. Section 20(e) of the Deed of Trust grants Lender the right to have a receiver appointed "without proof of depreciation or inadequacy of the value of the Mortgaged Premises and without other security of proof of the insolvency of Borrower."  Said receiver shall have the power to "(i) manage and operate any of the Mortgaged Premises; (ii) make, cancel, enforce, or modify Leases; (iii) obtain and evict tenants; (iv) establish or change the amount of any rents under the Leases; and/or (v) perform any acts which [the Lender] deems proper to protect the security of this Deed of Trust."  See Exhibit C, §20(e).

49. Pursuant to the terms of the Assignment of Rents, upon the occurrence of an event of default by the Borrower, Lender has the power and authority, with or without taking possession of the Real Estate (as defined therein), to demand, sue for or otherwise direct all tenants to pay directly to Lender all rents which may then be or thereafter become due under Leases encumbering the Real Estate.

50. A receiver is necessary to manage and operate the Mortgaged Property, as to collect the payments, rents, income and revenues from the Mortgaged Property, and to apply the same to the outstanding balances under the Note and the other Loan Documents, all to enforce Lender's rights and interests in the Mortgaged Property.

51. The Borrower has engaged in and continues to engage in improper and harmful conduct to the detriment of Lender's interests and liens in the Mortgaged Property, and Lender is in danger of imminent loss of its rights to and interests in the property due to the Borrower's complete disregard of its contractual obligations under the Loan Documents.

52. Moreover, the Borrower has not delivered to the Lender any evidence that it has obtained a permanent occupancy certificate for the Mortgaged Premises. Failure to obtain a permanent occupancy certificate could have a disastrous impact of the operation of the property and clearly on the Lender's interests and liens therein.

53. The immediate appointment of a receiver is, therefore, necessary to prevent further deterioration of the value of Lender's rights and interests in and to the Mortgaged Property.

54. The Borrower's neglect and willful waste and operation of the Mortgaged Property to detriment of the Lenders interests and liens therein, the Lender is entitled to the appointment of a receiver without the Lender taking possession of the Mortgaged Premises, to

assist the Lender with the operation and management of the Mortgaged Premises that is necessary to preserve and protect the value of the Lender's security pending foreclosure, pursuant to the terms of the Loan Documents.

55. Accordingly, the Lender is entitled to appointment of a receiver to take control of and operate and manage the Mortgaged Property, to collect the rents at said property, without the Lender taking possession of the Mortgaged Property, and to enforce the Lender's rights and interests therein in accordance with its rights arising under the aforesaid Deed of Trust and the other Loan Documents, and to take such other and further actions as necessary to preserve and protect the value of the Lender's security preceding foreclosure, such other and further relief as the Court deems just and appropriate.

## COUNT THREE
### ACTION ON COMPLETION GUARANTY
### AGAINST INDIVIDUAL DEFENDANTS

56. Plaintiff incorporates by reference Paragraphs 1 through 55 as though fully set forth herein.

57. Pursuant to the Completion Guaranty, each of the Individual Defendants agreed "unconditionally and independently of any liability of Borrower" (Completion Guaranty at p. 1) agreed, *inter alia*, (i) to ensure that the Project would be completed in accordance with the Loan Security Documents and (ii) to keep the Property (as defined therein) free and clear of all liens and claims related to the construction, equipping and completion of the Project including, without limitation, liens and claims of any and all person and entities performing labor or furnishing materials, or both, with respect thereto. Completion Guaranty, §2, pp. 1-2.

58. The Completion Guaranty provides that the "Lender may at its option proceed concurrently or in the first instance against [the Individual Defendants] to collect any obligation covered by this [Completion Guaranty] while concurrently or without first proceeding

against the Borrower any other person, firm or corporation and while concurrently or without first resorting to any property at any time held by Lender as collateral security, including without limitation, any balance of any deposit account or credit on the books of the Lender in favor of the [Individual Defendant] or any other person."  Completion Guaranty, §12, p. 6.

59. Each of the Individual Defendants refused, and continues to refuse, to perform their obligations under the Completion Guaranties.

60. The Completion Guaranty also provides that each Individual Defendant agreed to "fully indemnify and hold harmless Lender from all costs and damages which Lender may suffer as a result and will fully reimburse and repay to Lender all costs, expense and reasonable attorneys' fees incurred in the enforcement of any of the Loan Security Documents, including any guaranties."  Completion Guaranty, §3, p. 2.

61. Accordingly, the Lender is entitled to damages for breach of the Completion Guaranty, including attorneys' fees and other costs of enforcement.

## COUNT FOUR
## ACTION ON PAYMENT GUARANTY
## AGAINST INDIVIDUAL DEFENDANTS

62. Plaintiff incorporates by reference Paragraphs 1 through 61 as though fully set forth herein.

63. Pursuant to the Payment Guaranty, each of the Individual Defendants agreed to, *inter alia*, absolutely, unconditionally and irrevocably guarantee to Lender and become surety for, the prompt and timely payment to Lender of the Obligations.

64. Pursuant to the Payment Guaranty, each of the Individual Defendants further agreed to pay the Obligations when due, irrespective of whether (i) Lender has made any demand on the Borrower, (ii) Lender has taken any action or any nature against the Borrower,

(iii) Lender has pursued any rights which Lender has against any other person who may be liable for any of the Obligations, (iv) Lender holds or has resorted to any security for any of the Obligations, or (v) Lender has invoked any other remedies or rights Lender has available with respect to any of the Obligations.  Payment Guaranty, §3, p.2.

65.	Each of the Individual Defendants refused, and continues to refuse, to perform their obligations under the Payment Guaranties.

66.	The Payment Guaranty also provides that each Individual Defendant agreed to pay "all charges and expenses of collection incurred by Lender; and including all costs and expenses of collection incurred by Lender in connection with any of the foregoing, or any matter covered by this [Payment Guaranty], the Loan Agreement, or any of the other Loan Security Documents, including all attorneys fees. . . "  Payment Guaranty, pp. 1-2.

67.	Accordingly, the Lender is entitled to damages for breach of the Payment Guaranty, including attorneys' fees and other costs of enforcement.

## COUNT FIVE
## ATTORNEYS' FEES AND COSTS

68.	Plaintiff incorporates by reference Paragraphs 1 through 67 as though fully set forth herein.

69.	Pursuant to Section 11 of the Note, Plaintiff is entitled to reasonable attorneys' fees and costs incurred in the enforcement and collection of the Loan.  The Borrower expressly agreed as follows:

> If [Lender] retains the services of counsel in order to cure any Event of Default or to enforce a remedy under this Note or any other Loan Security Documents, [Lender's] attorney's fees shall be payable by [Borrower] to [Lender] and shall be secured by the Loan Security Documents.  [Borrower] shall pay the cost of the title search and all other costs incurred by [Lender] in connection with proceedings to recover any sums due hereunder.  [Borrower]

> shall also pay any charge of [Lender] in connection with the satisfaction of this Note and/or the Loan Security Documents of record.

See Exhibit B-1 at §11.

70. Section 24 of the Deed of Trust, entitled Counsel Fees, states, in relevant part:

> [If] . . . Lender engages counsel to cure any default under any of the Loan Security Documents or, following an Event (or Events) of Default, to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions or stipulations of this Deed of Trust or the Note, then Lender's costs, expenses and reasonable counsel fees, whether or not suit is instituted, shall be paid to Lender by Borrower, on demand, with interest at the Default Rate and until paid they shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Deed of Trust.

See Exhibit C at §24.

71. Section 38 of the Deed of Trust, entitled Reimbursement for Expenses, further states:

> Borrower shall pay or reimburse Lender on demand for all out-of-pocket expenses (including reasonable legal fees) of every nature (i) which Lender may incur in connection with this Deed of Trust, the other Loan Security Documents, or the making of the Loan, and (ii) arising out of or in connection with any action or proceeding (including any action or proceeding arising in or related to any insolvency, bankruptcy or reorganization involving or affecting Borrower) taken to protect, enforce, determine or assert any right or remedy under this Deed of Trust or the other Loan Security Documents.

See Exhibit C at §38.

WHEREFORE, Lender prays that it have judgment against Defendants Augusta Apartments, LLC, Kristian E. Warner, Benjamin F. Warner, Andrew M. Warner and Monroe P. Warner, jointly and severally, in the amount of $20,715,737.92, together with accruing interest,

at the Default Rate, attorneys' fees and expenses, late fees, and costs due to the Lender in bringing this proceeding, costs incurred in making repairs to, maintaining and preserving operating and preserving the Mortgaged Property, expenses incurred related to the receivership, including fees and compensation due to the receiver, taxes paid by Lender and any and all other costs, expenses, fees, monies and other amounts expended by Lender in exercising its rights and remedies under the Loan Agreement, Note, Guaranties, Deed of Trust and Assignment of Rents, and law and such amounts shall become a part of the indebtedness comprising the Loan and shall have super priority over all other liens of creditors secured by the Mortgaged Property, as evidenced by the Deed of Trust, Assignment of Rents and the Guaranties, and such other and further relief as the Court deems just and appropriate.

          Respectfully submitted,

          THORP REED & ARMSTRONG, LLP

Dated: February 5, 2010          By: /s/ Kimberly Luff Wakim
          Kimberly Luff Wakim
          W.Va. I.D. No. 4989
          Robert J. Hannen
          W.Va. I.D. No. 5496
          1233 Main Street
          Suite 4000
          Wheeling, WV 26003-2839
          304-233-5599

          Counsel for Plaintiff, PNC Bank, National Association, successor to National City Bank